**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL A. LAWRENCE, | ) | CASE NO. 3:24-CV-01894-CEH |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | CARMEN E. HENDERSON |
| v. | ) | |
| | ) | |
| COMMISSIONER OF THE SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant, | ) | |

## I. Introduction

Michael ("Lawrence" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 9). For the reasons set forth below, the Court AFFIRMS the Commissioner of the Social Security Administration's final decision denying Lawrence DIB and SSI.

## II. Procedural History

On November 22, 2022, Lawrence filed applications for DIB and SSI, alleging a disability onset date of November 7, 2022  and claiming he was disabled due to his cervical and lumbar spondylosis and his need for an assistive device for ambulation.  (ECF No. 8, PageID #: 41; ECF No. 10 at 10). The applications were denied initially and upon reconsideration, and Lawrence requested a hearing before an administrative law judge ("ALJ").  (ECF No. 8, PageID #: 154, 162, 166, 169).  On February 5, 2024, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified.  (ECF No.  8, PageID #: 72, 78, 97).  On,

1

May 30, 2024, the ALJ issued a written decision finding Lawrence was not disabled.  (ECF No. 8, PageID #: 38).  The ALJ's decision became final on September 5, 2024, when the Appeals Council declined further review.  (ECF No. 8, PageID #: 32).

On October 30, 2024, Lawrence filed his Complaint to challenge the Commissioner's final decision.  (ECF No. 1).  The parties have completed briefing in this case. (ECF Nos. 10, 11). Lawrence asserts the following assignment of error: "the ALJ's RFC is not supported by substantial evidence." (ECF No. 10, PageID #: 1772).

## III. Background

### A.  Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Lawrence's hearing:

> During the hearing, . . . the claimant testified he lives in a house with his ex-wife and daughter, he has eight stairs to get in the house, and he also has stairs in the house that lead to the bedroom and only bathroom. He alleged he needs to get his driver's license updated, but was able to drive himself doctor's appointments, and he currently has no driving limitations. However, there was a period of time, approximately three to four weeks after his neck surgery, when he could not drive. He acknowledged having health insurance at all times, and with no periods of time without health insurance.
> …
>
> When questioned by his representative, the claimant alleged he stopped working because of daily back pain and daily left hand numbness. He reported he needs additional surgeries, he can stand for an hour at a time before he needs a break, sitting bothers him, and lying flat is the best position for him. He added he lies down most of the day, but he walks back and forth for 20 minutes once or twice a day. He further alleged he uses a cane which was ordered by his doctor, and he was told he may need a walker but has not been ordered.

(ECF No. 8, PageID #: 47–48).

### B.  Relevant Medical Evidence

The ALJ also summarized Lawrence's health records and symptoms:

As for the relevant medical evidence dated as of November 7, 2022, the alleged onset date, the claimant received care on November 16, 2022, for his back pain and intermittent paresthesias in the left upper extremity with numbness. Despite his pain, 4/5 strength in his left upper extremity, and paresthesias with numbness, the rest of his exam was normal. He was alert and oriented with intact memory. His cranial nerves II-XII were intact, his other motor function was normal, his sensation was intact, his cerebellar function was normal, his reflexes were normal, and his gait was normal. He was prescribed gabapentin (2F & 3F). On December 29, 2022, the claimant had a follow-up appointment and assessed with cervical spondylosis with radiculopathy, and spondylosis with radiculopathy of the lumbar region. The claimant noted back pain, numbness and tingling, and some issue with grip strength in his left upper extremity, which caused him to drop things. However, the rest of his exam was normal besides a positive Tinel, Phalen's, and Spurling test. He denied myalgias, joint swelling, and anxiousness, his reflexes were normal, his Hoffmans, Clonus, and Babinski tests were negative, strength was 5/5 and his sensation was intact every[sic] except his left upper extremity, his neck was supple, his affect was appropriate, his judgement, orientation, and registration were intact, and his cranial nerves were normal. His medications included, gabapentin, Proventil, Norvasc, Lipitor, Zyrtec, Vitamin D3, and ibuprofen (3F).

December 2022 imaging showed only mild multilevel lumbar spondylosis, and multilevel endplate spurring most pronounced at C5-C6. The claimant started physical therapy in December 2022 and his goals included increasing grip strength, reducing pain, and increase range of motion. January 2023 imaging of the chest showed biapical predominant emphysema. As of February 2023, it was noted the claimant would benefit from continued therapy, but he missed multiple appointments (4F).

As of March 15, 2023, the claimant still complained of back pain with radiation into his hip. It was noted an electromyography noted mild chronic left C5-6 radiculopathy but there was no evidence of ulnar or radial compression, plexopathy, myopathy, or compression neuropathy. On exam, the claimant was alert and oriented, his cranial nerves were intact, he had normal strength except for his left upper extremity, which was 4/5, he had normal sensation, his cerebellar function, reflexes, and gait were all normal (7F). A March 29, 2023, CT of the chest showed chronic changes of emphysema and biapical bullous formation greatest on the right without acute pulmonary process with multiple pulmonary nodules up to 9 mm in the right middle lobe with other areas scattered bilaterally (7F).

On April 21, 2023, the claimant had a follow up and he was assessed with chronic obstructive pulmonary disease. A pulmonary function test showed only mild obstruction lung volumes, hyperinflation, and normal diffusion capacity. On exam, he had no tachypnea, retractions or cyanosis bilateral symmetrical chest movement, slight increase resonance on percussion, air entry is present bilaterally and symmetrical slightly distant, and no expiratory wheezing rhonchi or crackles. In addition, on exam, the claimant was the claimant was [sic] alert and oriented with normal speech and no focal findings or movement disorders. His peripheral pulses were normal, and he had no pedal edema, clubbing, or cyanosis (9F). On April 24, 2023, he had a follow-up
for his back impairment. The claimant reported his symptoms remained fairly stable. He completed physical therapy, which provided improvement to lower back/hip pain. On exam, he had positive Tinel, Phalen's, and Spurling test. However, he denied myalgias, joint swelling, and anxiousness, his reflexes were normal, his Hoffmans, Clonus, and Babinski tests were negative,
strength was 5/5 and his sensation was intact every [sic] except his left upper extremity, his neck was supple, his affect was appropriate, his judgement, orientation, and registration were intact, and his cranial nerves were normal (9F & 11F).

On June 7, 2023, the claimant received a cervical epidural steroid injection, and he tolerated the procedure well (10F & 16F). Thereafter on June 19, 2023, the claimant had a nerve (BVN) ablation at L4, L5, and SI. He tolerated the procedure well (10F & 23F). On June 27, 2023, a CT of the chest showed "Nodularity in the right middle lobe measures up to 9 mm previously around
7-8 mm could represent minimal increased versus differences in technique or measuring although arguably mildly enlarged with subsegmental linear atelectasis at the lung bases" (10F).

On July 11, 2023, the claimant had a follow-up for his spinal impairments. He noted neck pain and left upper extremity numbness and tingling. On exam, he had a positive Phalen's on the left and interosseous 4/5, but the rest of the exam was normal. He had no edema, he was alert and oriented, his speech was articulate, the rest of his motor strength was 5/5, he had no pronator drift, and his sensation was symmetrical. His mediations [sic] included Advair, gabapentin, Proventil, Norvasc, Lipitor, Zyrtec, Vitamin D3, and ibuprofen. He also had a follow-up in July 2023 for his chronic obstructive pulmonary disease and emphysema, but he denied any changes in his symptoms (12F).

4

On August 23, 2023, the claimant underwent an anterior cervical arthroplasty C5-6. He tolerated the procedure well without complication and post-surgery imaging confirmed the claimant's C5-6 intervertebral device was intact, his vertebral bodies were normally aligned, and he had multilevel minimal degenerative disc disease. He started therapy after surgery in September 2023 and his goals included decreasing pain, and increasing range of motion, strength, and functionality (14F), although as noted above, he was discharged as missing six sessions, (Id).

An October 17, 2023, chest CT scan showed redemonstration of severe emphysema especially right upper lobe, scattered mediastinal nodes with no evidence of lymphadenopathy with nodes measuring less than 1 cm in diameter, redemonstration of nodularity with increasing number of nodules especially in the right lung, and bilateral lower lobe scarring, but no active pleural disease and no evidence of consolidative infiltrates. An October 27, 2023, bone scan showed mild degenerative disc disease and facet arthropathy of the lumbar spine, with greatest activity at L5-S1 and an October 30, 2023, CT of the lumbar spine showed mild S-shaped lumbar spinal curvature with a predominant levoconvex component with apex at L4-L5, asymmetric degenerative changes at the compressive side of the spinal curve in the lower lumbar levels with disc disease greatest at L4-L5, and neuroforaminal stenosis greatest at L5-S1 (14F). As of his October 30, 2023, follow-up appointment, the claimant reported significant improvement in his neck and left arm pain after his cervical spine disc replacement. While he still had pain with some radiation into his right left [sic], he denied weakness or numbness. On exam, his straight leg raise was positive on the right and he had limitations in his range of motion, and his gait was antalgic, but the rest of the exam was normal. He had normal pulmonary effort and a normal respiratory rate, he was alert and oriented x 3, he had normal strength and coordination, and he had no apparent deformity (13F).

On November 30, 2023, the claimant was evaluated at Mercy Health Heart and Vascular institute. On exam, the claimant had reported back pain and numbness, but the rest of his exam was normal. His pulmonary effort was normal, he was not in respiratory distress, his heart rate and rhythm was normal, his pulse were 2+ throughout, he [sic] cervical back had a normal range of motion, his legs had no swelling, tenderness, or edema, his feet had normal capillary refill with no tenderness or swelling, he was alert and oriented x 3, his sensation and motor function was intact, and his mood, speech, behavior, and thought content were normal (24F).

As of January 3, 2024, the claimant received care for his lumbar degenerative disc disease with radiculopathy and lumbosacral spondylosis. He denied fever, numbness, swelling, shortness of breath, wheezing, chest tightness, fatigue, and weakness, but he still had neck pain that was radiating into his left arm, as well as pain in his lower back pain [sic] that was radiating into his right left [sic]. The claimant was also using a cane and his gait was antalgic. On exam, the claimant was well appearing, he had normal pulmonary function, his extremities had normal range of motion with no deformity, and he was alert and oriented x 3, with normal strength and coordination. Due to his complaints, he underwent a lumbar discogram with post discography CT scan (18F).

(ECF No. 8, PageID #: 50–52).

### C. Opinion Evidence at Issue

In May 2023, State agency medical consultant, Dr. Sarah Garon, opined that Lawrence

should be limited to light work with no climbing of ladders, ropes, or scaffolds, frequent climbing of ramps and stairs, stooping, and crawling, frequent reaching (overhead, front, and/or laterally), handling, and fingering with the left upper extremity, and to avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc., and hazards including unprotected heights and operation of heavy machinery.

(ECF No. 8, PageID #: 53, 106–25). In August 2023, on reconsideration, State agency medical consultant, Dr. Leon Hughes, gave the same opinion. (ECF No. 8, PageID #: 53, 128–35). The ALJ ultimately found these opinions partially persuasive. (ECF No. 8, PageID #: 53). The ALJ additionally considered a November 2023 functional capacity evaluation completed by physical therapist Anne Schroder, a November 2023 treating source opinion completed by Advanced Practice Registered Nurse ("APRN") Lauri Oakes, based in part on the functional capacity evaluation, and a January 2024 medical opinion from Certified Nurse Practitioner ("CNP"), Virginia Pierce, who reviewed the medical records through November 22, 2023 but did not examine Lawrence. (ECF No. 8, PageID #: 53–55). Ultimately the ALJ found these later opinions unpersuasive and inconsistent with the medical records (ECF No. 8, PageID #: 53–55). Lawrence

challenges the ALJ's reliance on the opinions from the State agency medical consultants, claiming these opinions are outdated. (ECF No. 10 at 10).

## IV.    The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 5. After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant: can frequently reach, handle, finger with the left, nondominant, upper extremity, climb stairs or ramps, stoop, or crawl; can never climb ladders, ropes, or scaffolds, or balance, as that term is used vocationally. Occasional exposure to humidity, fumes, dusts, odors, gases, poor ventilation, dangerous moving machinery, and no exposure to unprotected heights.

> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

> 11. The claimant has not been under a disability, as defined in the Social Security Act, from November 7, 2022, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(ECF No. 8, PageID #: 47, 55, 56, 57).

## V. Law & Analysis

### A.  Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B.  Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform his past relevant work in light of his residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that he is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant

8

has the residual functional capacity to perform available work in the national economy. *Id.*

## C. Discussion

Lawrence raises one issue on appeal. He argues that the ALJ's RFC is not supported by substantial evidence. (ECF No. 10 at 10). To support this argument, Lawrence asserts:

a. The ALJ Erred by Assessing Plaintiff's RFC Based on Outdated State Agency Medical Consultant Opinions[;]

b. The ALJ Failed [sic] Adequately Explain Why Plaintiff Did Not Require an Assistive Device to Ambulate[; and]

c. The ALJ Failed to Adequately Explain Why Plaintiff Can Stand and Walk Frequently.

(ECF No. 10 at 10, 15, 16). The Court addresses each argument in turn.

### 1. The ALJ Did Not Err in Relying in Part on State Agency Medical Consultant Opinions She Found Partially Persuasive to Support her RFC Finding of a Reduced Range of Light Work, and Claimant's RFC is Supported by Substantial Evidence.

#### a. The ALJ Did Not Err by Failing to Develop the Record Sufficiently to Assess Plaintiff's RFC

Claimant argues that the ALJ erred in relying on "outdated" State agency medical consultant opinions to formulate his RFC, as these consultants never had the opportunity to consider a critical body of medical evidence, and argues, therefore, that the ALJ "necessarily relied on her own lay interpretation of the medical evidence to assess Plaintiff's RFC." (ECF No. 10 at 14). Thus, Claimant argues, his RFC is not supported by substantial evidence because the ALJ relied on her own interpretation of the evidence. (ECF No. 10 at 14). Further, relying on *Deskin v. Commissioner of Social Security*, and its progeny, Plaintiff argues that the ALJ erred in failing to develop the record sufficiently to address his RFC and argues that the case should be remanded for further development of the record and assessment of his RFC. (ECF No. 10 at 13, 15).

The Commissioner argues that the ALJ was permitted to cite the prior administrative medical findings as support for the RFC even though additional records were added following those opinions, for this Court has held that an ALJ "may rely on prior administrative medical findings so long as she takes subsequent relevant changes into account." (ECF No. 11 at 9) (citing *Young v. Comm'r of Soc. Sec.*, No. 1:23-CV-01435, 2024 WL 3387315, at *18 (N.D. Ohio June 18, 2024)). The Commissioner further argues that several decisions from the Court have criticized *Deskin*, explaining both that "*Deskin* is not representative of the law established by the legislature, and [as] interpreted by the Sixth Circuit Court of Appeals," (ECF No. 11 at 11) (quoting *Henderson v. Comm'r of Soc. Sec.,* No. 1:08-cv-2080, 2010 WL 750222 at *2 (N.D. Ohio Mar. 2, 2010)) and that *Deskin* "require[s] an impermissibly higher burden that [sic] the Sixth Circuit '[b]y requiring an ALJ to secure a medical opinion whenever the record does not contain such an opinion, subject to only limited exceptions.'" (ECF No. 11 at 11) (quoting *Winans v. Comm'r of Soc. Sec*., No. 5:22-cv-01793, 2023 WL 7622634, *4 (N.D. Ohio November 15, 2023)).

The *Deskin* Court set forth the following rule:

> [when] the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations (or only an outdated nonexamining agency opinion), to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing. This responsibility can be satisfied without such opinion only in a limited number of cases [in which] the medical evidence shows relatively little physical impairment and an ALJ can render a commonsense judgment about functional capacity.

605 F. Supp. 2d at 912 (quotation marks and citation omitted). The *Deskin* Court later clarified its decision in *Kizys v. Commissioner of Social Security*, No. 3:10 CV 25, 2011 WL 5024866 (N.D. Ohio Oct. 21, 2011). *Kizys* explained that *Deskin* potentially applies in only two circumstances: 1)

when an ALJ made an RFC determination based on no medical source opinion; or 2) when an ALJ made an RFC determination based on an "outdated" medical source opinion "that does not include consideration of a critical body of objective medical evidence." *See Kizys*, 2011 WL 5024866, at *2; *see also Raber v. Comm'r of Soc. Sec.*, No. 4:12-cv-97, 2013 WL 1284312, at *15 (N.D. Ohio Mar. 27, 2013) (explaining post-*Deskin* application of the rule).

The Court finds that the *Deskin* does not apply here. The *Deskin* rule states that when "the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations (or only an outdated nonexamining agency opinion)" the ALJ "must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing" to fulfill her responsibility of developing a full record. *Deskin*, 605 F. Supp. 2d at 912. Here, while the ALJ partially relies on two State agency medical consultants' opinions to support her RFC findings, and the consultants who gave these opinions did not have the opportunity to review a significant body of later evidence, there were other medical opinions given later in the record that did consider nearly the entire body of evidence.[1] Thus, this is not the case where the record contains no opinion from a medical source or only an outdated opinion, and the ALJ was not required to develop the record any further by seeking any additional opinions or expert testimony.  Further, the ALJ was not required under *Deskin* to agree with the later medical opinions or to base her RFC assessment on such opinions, nor was she required to seek out later medical opinions that did agree with her RFC analysis. *Kleinhans v. Kijakazi*, No. 3:23-CV-00173, 2023 WL 7923901, at * 7 (N.D.

---

[1]  On November 14, 2023, Anne Schroeder, a physical therapist, assessed Claimant and completed a corresponding Functional Capacity Evaluation ("FCE"). (ECF No. 8, PageID #: 1310–25). On November 22, 2023, a Treating Source Statement opining on Claimant's physical conditions, based in large part on Ms. Schroeder's FCE, was completed by Lauri Oakes, APRN. (ECF No. 8, PageID # 1308–09). And on January 28, 2024, Virginia Pierce, CNP, reviewed the medical record through November 22, 2023 and opined on Claimant's physical conditions and limitations. (ECF No. 8, PageID #: 1395–98).

Ohio Sept. 28, 2023) (objections pending) ("As an initial matter, this Court reiterates the rule that an ALJ is not required to base her RFC determination on a particular medical opinion.") (citing 20 C.F.R. §§ 404.1527(d), 416.927(d) ("The determination of an individual's residual functional capacity is an issue reserved for the Commissioner.")).  For to require her to do so would be to effectively "transfer the statutory responsibility to determine if an individual is under a disability from an ALJ to a medical source." *Id.* (citing *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013)).

Here, the ALJ permissibly relied on the earlier State agency medical consultant opinions because, as evidenced by the transcript, she considered the subsequent relevant changes as required by *Young. See Young*, 2024 WL 3387315, at *18; *see also Peterson v. Comm'r of Soc. Sec.*, No. 1:23-CV-01831-CAB, 2024 WL 3387346 (N.D. Ohio June 25, 2024), *report and recommendation adopted*, No. 1:23-CV-1831, 2024 WL 3401179 (N.D. Ohio July 12, 2024) ("The ALJ can assign weight to state agency opinions even if those opinions were not based on the entire record, provided the ALJ considers any evidence submitted after the state agency opinions were issued."). In finding the State agency medical consultant opinions partially persuasive, the ALJ explained that recent records also supported the finding that Claimant "retains the ability to engage in less than a full range of light work" and specifically cites to evidence from three later examinations— from October 30, 2023, November 30, 2023, and January 3, 2024—that support that finding. (ECF No. 8, PageID #: 53).

Further, Lawrence's claim that the ALJ impermissibly interpreted raw medical data is not well taken. First, it the ALJ's job to consider the medical evidence and non-medical evidence and make an RFC determination, and she did not impermissibly play doctor by doing so without relying on a consistent, recent medical opinion. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x

435, 439 (6th Cir. 2010) ("An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding."). Second, in making this assertion, Claimant appears to argue that the ALJ cannot consider any of the semi-recent medical record evidence without a new, consistent opinion. (*See* ECF No. 10 at 13). Claimant does not specifically cite any actual raw medical data that the ALJ impermissibly considered—*i.e.* Claimant does not say ALJ herself read an x-ray or MRI. Thus, the Court is not even certain what evidence Lawrence alleges the ALJ improperly "interpreted" in assessing his RFC, and Lawrence has not shown the ALJ erred in considering the medical evidence to assess his RFC.

In conclusion, the Court finds that the ALJ did not have a duty to develop the record any further by seeking additional medical opinions, and, thus, there is no error in her not doing so.

### b.  The ALJ's RFC Is Supported by Substantial Evidence

Claimant argues that the ALJ misrepresented the evidence in finding that the recent medical records—including treatment notes from October 30, 2023, November 30, 2023, and January 3, 2024—do not contradict her RFC for light work or the opinions of the State agency medical consultants. (ECF No. 10 at 11). To support his argument, Lawrence cites to evidence from these appointments that supports further limitations on his ability to work. Lawrence asserts that at the October 30, 2023 exam, he "continued to complain of intermittent left arm numbness, radiating pain into the right leg, right leg numbness, and pain interfering with quality of life and activity level, with a pain level of 8 out of 10" and also explained that the examination showed "limited range of motion in the lumbar spine, antalgic gait, and positive straight leg raise testing on the right" and that it was "noted that a recent lumbar MRI showed spinal stenosis and foraminal narrowing at L5-S1 on the right side." (ECF No. 10 at 11). He continues, explaining that at the

13

November 30, 2023 appointment, it was noted that "that while [he] was experiencing some relief from the cervical spine surgery, his lumbar spine symptoms and radiculopathy were worsening" and that he had "significant degenerative disc disease at L4-5 and that lumbar epidural injections had only helped for a short period." (ECF No. 10 at 11–12). Additionally, Lawrence asserts that he "reported he could not make it up and down the steps in his home and was sleeping on the first floor at that point in time" and that the "[e]xamination revealed gait problems, myalgias, back pain, arthralgias, and numbness." (ECF No. 10 at 12). Finally, Lawrence explains that treatment notes from his January 3, 2024 examination "noted that [he] had an antalgic gait, ambulated with a cane, back pain with radiation down the right leg, and an MRI that was positive for multilevel lumbar facet arthopathy [sic] degenerative disc disease and foraminal narrowing." (ECF No. 10 at 12). Claimant explains that at the same appointment, he "reported that his symptoms were aggravated by walking and standing and that his pain level was an 8 out of 10" and that he had a lumbar discogram performed at L3-L4 and L5 and was diagnosed with chronic low back pain, lumbar disc disease, and discogenic lower back pain.[2] (ECF No. 10 at 12).

Additionally, Lawrence argues that the ALJ also cites the same three examinations—from October 30, 2023, November 30, 2023, and January 3, 2024—to find the November 14, 2023 physical work performance evaluation and the January 28, 2024 nurse practitioner opinion that found Lawrence was limited to sedentary work were unpersuasive. (ECF No. 10 at 12).

The Commissioner argues that the ALJ did not misrepresent the evidence, rather, she acknowledged Claimant's symptoms and resolved potentially conflicting evidence in a manner well within her zone of choice. (ECF No. 11 at 6–8). For instance, the Commissioner argues that

---

[2] It appears to the Court based on the record that Claimant was diagnosed with these conditions prior to the discogram, and the discogram merely confirmed these diagnoses. (ECF No. 8, PageID #: 1337).

the "ALJ directly acknowledged Plaintiff had radiculopathy from his cervical and lumbar spine, but the ALJ also correctly pointed out that Plaintiff said neck surgery resulted in significant improvement in upper body radiculopathy, and also cited examinations showing Plaintiff's strength and mobility tended to be otherwise normal in his lower extremities, at least until late 2023." (ECF No. 11 at 7). Further, the Commissioner explains, "the ALJ acknowledged increased lower body symptoms beginning near the end of 2023, including a positive straight leg raising test, along with limping gait starting around the same time; still, the ALJ not unreasonably placed those findings in the context of Plaintiff's long history of unremarkable lower body findings and normal gait." (ECF No. 11 at 7).

Additionally, the Commissioner asserts that the ALJ "relied on the partially persuasive prior administrative medical findings from May and August 2023, which supported the RFC for a reduced range of light work" and argues that prior administrative medical findings, like the State agency medical consultants' opinions here, constitute substantial evidence to support an ALJ's decision." (ECF No. 11 at 9) (citing *Maldonado o/b/o A.C. v. Kijakazi*, No. 4:20-CV-1878, 2022 WL 361038, at *6 (N.D. Ohio Jan. 14, 2022) ("There is ample case law concluding that State Agency medical consultative opinions may constitute substantial evidence supporting an ALJ's decision.") (collecting cases), *report and recommendation adopted*, 2022 WL 356557 (N.D. Ohio Feb. 7, 2022). Again, the Commissioner explains that the ALJ was permitted to rely on these opinions as she considered the evidence from after the opinions were issued in formulating the RFC. (ECF No. 11 at 10). The Commissioner further explains that "[t]o the extent that conflicts between the prior administrative medical findings and medical sources exist, it is the ALJ who resolves those conflicts, as long as her findings were within her zone of choice" and argues that here, "because the ALJ pointed to what a reasonable person could agree were inconsistencies

15

between [the later medical opinions] and other evidence in the record, her findings were within her zone of choice." (ECF No. 11 at 10–11).

Finally, the Commissioner notes that the Court's only inquiry is whether the ALJ's findings were supported by substantial evidence and warns that "it is ALJ's role to evaluate and resolve conflicting evidence; once the ALJ renders a decision, Courts consider only whether substantial evidence supports the ALJ's conclusions, not whether the ALJ should have resolved conflicts the other way." (ECF No. 11 at 11–12).

The Court finds that Claimant has failed to demonstrate that the ALJ's RFC determination is not supported by substantial evidence. The ALJ held that while the recent treatment records support a finding that Claimant has some functional limitations, they do not support a finding that his conditions are disabling, and Claimant "retains the ability to engage in less than the full range of light work." (ECF No. 8, PageID #: 49, 50). The ALJ considered Claimant's testimony from the hearing, during which he stated that he quit working because of daily back pain and left-hand numbness, that he needs additional surgeries, that he could stand for only an hour before needing a break, that sitting bothers him, and that he lies down most of the day. (ECF No. 8, PageID #: 47–48). The ALJ also considered Claimant's allegations that he uses a cane that was ordered by his doctor and that he may need a walker, but the walker had not been ordered. (ECF No. 8, PageID #: 48). However, the ALJ found that "a careful review of the record does not document sufficient objective medical evidence to substantiate the severity of the pain and degree of functional limitations alleged by the claimant." (ECF No. 8, PageID #: 48).

The ALJ supported these findings by discussing the medical evidence of the record. First, she notes that there is no mention of the use of a walker in the record, and the first mention of a cane is in a physical therapist opinion from November 2023, which repeated Claimant's own report that

he has been using a cane for four months prior. (ECF No. 8, PageID #: 48). However, the ALJ explained, there was no mention of cane use before that opinion, nor was there any mention of cane use in treatment records after that opinion until the January 3, 2024 examination. (ECF No. 8, PageID #: 48). Then, the ALJ thoroughly reviewed the evidence from the alleged onset date onward. She acknowledged that Claimant sought treatment for back pain and upper extremity paresthesia and numbness beginning in November 2022 and was assessed with lumbar and cervical spondylosis with radiculopathy in December 2022, but, as the Commissioner asserts, the ALJ also discussed how, from the alleged onset date until late 2023, Claimant's lower body examination findings were relatively normal. For example, from December 2022 through July 2023, Claimant was found to have normal gait,[3] treatment notes did not reflect focal findings or movement disorders, Claimant generally had a normal range of motion, had normal coordination and strength, and there was no use of assistive device noted. (ECF No. 8, PageID #: 48). The ALJ acknowledged that in August 2023, Claimant underwent an anterior cervical arthroplasty at C5-6 and tolerated the procedure well without complication. (ECF No. 8, PageID #: 51). She also notes that Claimant began physical therapy in September 2023 but was discharged from physical therapy in October 2023 for missing six sessions. (ECF No. 8, PageID #: 48, 49, 52).

The ALJ additionally reviewed evidence from the more recent treatment records and found that those records indicate that Claimant retains the ability to engage in a less than full range of light work. (ECF No. 8, PageID #: 53). In October 2023, Claimant underwent a bone scan showing mild degenerative disc disease and facet arthropathy of the lumbar spine and a CT scan showing degenerative changes of the lumbar spine in addition to neuroforaminal stenosis. (ECF No. 8,

---

[3] The ALJ writes that Claimant complained of gait problems in April 2023 and in July 2023 but also writes that treatment notes from those months reflect normal or stable gait. (ECF No. 8, PageID #: 48).

PageID #: 52). However, the ALJ noted that at his October 30, 2023 follow-up appointment, Claimant "reported significant improvement in his neck and left arm pain after his cervical spine disc replacement," and while he still reported some pain radiating into his right leg, he denied weakness or numbness. (ECF No. 8, PageID #: 52). The ALJ also noted that "[o]n exam, [Claimant's] straight leg raise was positive on the right and he had limitations in his range of motion, and his gait was antalgic, but the rest of the exam was normal. He had . . . normal strength and coordination, and he had no apparent deformity." (ECF No. 8, PageID #: 52). The ALJ acknowledged further that at his November 30, 2023 exam, Claimant reported back pain and numbness, but she also noted that the rest of his exam was again normal, explaining that his "cervical back had a normal range of motion, his legs had no swelling, tenderness, or edema, his feet had normal capillary refill with no tenderness or swelling, he was alert and oriented x 3, his sensation and motor function was intact, and his mood, speech, behavior, and thought content were normal." (ECF No. 8, PageID #: 52). Finally, the ALJ analyzed the evidence from Claimant's January 3, 2024 examination, the examination nearest in time to the hearing, and explained that Claimant "received care for his lumbar degenerative disc disease with radiculopathy and lumbosacral spondylosis" and noted that "he still had neck pain that was radiating into his left arm, as well as pain in his lower back pain [sic] that was radiating into his right left [sic]," was using a cane, and had antalgic gait. (ECF No. 8, PageID #: 52). However, the ALJ also noted that Claimant "denied fever, numbness, swelling, shortness of breath, wheezing, chest tightness, fatigue, and weakness," and on exam, Claimant "was well appearing, he had normal pulmonary function, his extremities had normal range of motion with no deformity, and he was alert and oriented x 3, with normal strength and coordination." (ECF No. 8, PageID #: 52).

18

A reasonable mind might accept the record evidence the ALJ discusses as contradictory to the severe limitations Claimant alleges—including evidence of Claimant's history of normal lower body findings prior to late 2023, lack of mention of use of assistive device in treatment notes until January 2024, improvement of Claimant's cervical back pain with surgery, Claimant's failure to attend physical therapy following surgery, and Claimant's recent medical records, which despite showing continuing lumbar back pain and antalgic gait, showed normal range of motion in cervical back, lack of deformity, lack of swelling or tenderness in his legs, and normal strength and coordination—as adequate to support the ALJ's conclusion that Claimant can engage in a reduced range of light work, as described in the RFC. Thus, the ALJ's RFC determination is supported by substantial evidence.

Additionally, the ALJ's RFC is supported by the State agency medical consultants' opinions. Both State agency medical consultants who reviewed the medical evidence through April 2023 in this case opined that Claimant

> should be limited to light work with no climbing of ladders, ropes, or scaffolds, frequent climbing of ramps and stairs, stooping, and crawling, frequent reaching (overhead, front, and/or laterally), handling, and fingering with the left upper extremity, and to avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc., and hazards including unprotected heights and operation of heavy machinery.

(ECF No. 8, PageID #: 53). The ALJ found these opinions partially persuasive and adopted essentially the same RFC, imposing merely two additional limitations—including that Claimant should have no exposure to unprotected heights and no more than occasional exposure to humidity due to Claimant's testimony regarding balance issues and COPD. (ECF No. 8, PageID #: 53). The ALJ found that these opinions were "still mostly consistent with the treatment records that indicate the claimant still has back pain and left upper extremity numbness," and reiterates that the recent

records—including those from Plaintiff's October 30, 2023, November 30, 2023, and January 3, 2024 examinations—also indicate Claimant retains the ability to complete a limited range of light work, as opined by the State agency medical consultants. (ECF No. 8, PageID #: 53).

"An RFC determination that is supported by the medical opinions of state agency physicians is generally supported by substantial evidence." *Sittinger v. Comm'r of Soc. Sec.*, No. 1:22-CV-01927-BYP, 2023 WL 6219412, at *13 (N.D. Ohio Sept. 7, 2023), *report & recommendation adopted sub nom.*, 2023 WL 6214530 (N.D. Ohio Sept. 25, 2023); *see also Maldonado o/b/o A.C. v. Kijakazi*, No. 4:20-CV-1878, 2022 WL 361038, at *6 (N.D. Ohio Jan. 14, 2022) ("There is ample case law concluding that State Agency medical consultative opinions may constitute substantial evidence supporting an ALJ's decision.") (collecting cases), *report & recommendation adopted sub nom.*, 2022 WL 356557 (N.D. Ohio Feb. 7, 2022). While Claimant argues that the ALJ erred in relying on these opinions, calling them "outdated," as the State agency medical consultants did not have the opportunity to review the entire record when they gave these opinions, as this Court has described above, the ALJ was permitted to rely on these opinions, as she considered the subsequent relevant changes in the evidence that occurred after the State consultants gave their opinions. *See*, *Young v. Comm'r of Soc. Sec.*, No. 1:23-CV-01435, 2024 WL 3387315, at *18 (N.D. Ohio June 18, 2024); *Peterson v. Comm'r of Soc. Sec.*, No. 1:23-CV-01831-CAB, 2024 WL 3387346 (N.D. Ohio June 25, 2024), *report and recommendation adopted*, No. 1:23-CV-1831, 2024 WL 3401179 (N.D. Ohio July 12, 2024). Thus, the ALJ's RFC determination is supported by substantial evidence.

Claimant points to evidence in the record that could potentially support a finding of a more limited RFC, but such a showing does not permit the Court to overrule the ALJ's decision, so long as the decision made by the ALJ is supported by substantial evidence. *Ealy v. Comm'r of Soc. Sec.*,

594 F.3d 504, 512 (6th Cir. 2010) ("If the Commissioner's decision is based upon substantial evidence, we must affirm, even if substantial evidence exists in the record supporting a different conclusion."); *see also Cutlip v. Sec'y of Health & Hum. Servs.,* 25 F.3d 284, 286 (6th Cir. 1994) ("If the Secretary's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.").

When deciding whether substantial evidence supports an ALJ's decision, a court "[does] not try the case de novo, resolve conflicts in evidence, or decide questions of credibility.'" *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir.2007). "Judicial review is limited to determining whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied." *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997). In the present case, the ALJ considered the record evidence, including evidence that Claimant's back pain and conditions persisted, and ultimately determined that Claimant retained the ability to perform a limited range of light work. The ALJ applied the correct legal standards and supported her decision with substantial evidence, including objective evidence from the record and two State agency medical consultants' opinions.

### 2. The ALJ Adequately Explained her Decision to Omit Lawrence's Cane from the RFC and that Decision is Supported by Substantial Evidence.

Claimant argues that the ALJ "failed to reconcile probative evidence that Plaintiff used a cane with her finding that one was not necessary." (ECF No. 10 at 15). He also asserts that the ALJ failed to "materially discuss" the evidence in the record that supports that he was using a cane. (ECF No. 10 at 16). The Commissioner argues that the ALJ "specifically held that the cane was

not sufficiently documented over the course of the relevant period, writing '[w]hile it has been noted the claimant is using a cane, the [November 2023 and January 2024 examinations] are the most recent in the record and the clinical findings are not consistent with the need for a cane.'" (ECF No. 11 at 12). The Commissioner argues that the ALJ's findings regarding the cane are supported by substantial evidence "including Plaintiff's course of treatment up until late 2023, conflicting evidence about whether Plaintiff used a cane in the four months prior to November 2023, and the fact that Plaintiff's use of a cane only appeared late during the relevant period" and asserts that it is not true that the ALJ made no substantive finding regarding the use of a cane, that she misrepresented records related to the cane, or that she offered no explanation for omitting the cane from the RFC. (ECF No. 11 at 13).

The Court agrees with the Commissioner. In her opinion, the ALJ directly addresses the evidence that notes that Claimant had been using a cane, and she finds that the clinical findings from the November 30, 2023 exam and January 3, 2024 exam "are not consistent with the need for a cane." (ECF No. 8, PageID #: 49). The ALJ does not stop there, however, she identifies the clinical findings she finds inconsistent with the need for the cane. She writes:

> [O]n November 30, 2023, the claimant's pulmonary effort was normal, his cervical back had a normal range of motion, his legs had no swelling, tenderness, or edema, his feet had normal capillary refill with no tenderness or swelling, and his sensation and motor function was intact (24F). Likewise, on January 3, 2024, the claimant denied numbness, swelling, fatigue, and weakness, and on exam, the claimant was well appearing, he had normal pulmonary function, his extremities had normal range of motion with no deformity, and he had normal strength and coordination (18F).

(ECF No. 8, PageID#: 49–50). She additionally notes that evidence also indicates that Claimant experienced significant relief after his surgery, and at his October 30, 2023 appointment, Claimant "reported significant improvement in his neck and left arm pain after his cervical spine disc

replacement" and "[o]n exam, he had normal pulmonary effort and a normal respiratory rate, he had normal strength and coordination, and he had no apparent deformity." (ECF No. 8, PageID #: 50).

Additionally, the ALJ addressed Claimant's hearing testimony that he uses a cane that was ordered by his doctor and discusses the conflicting evidence regarding if and how long Claimant used that cane. She wrote that the first notation of a cane or use of assistive device was in a physical therapist's opinion from November 2023, which appeared to only repeat Claimant's own allegations that he had been using a cane for four months. (ECF No. 8, PageID #: 48). But, the ALJ explains, no treatment records prior to that time noted Claimant's use of a cane. (ECF No. 8, PageID #: 48). Additionally, the ALJ notes, treatment records following the physical therapist's November 2023 opinion do not mention Claimant's use of a cane again until January 3, 2024. (ECF No. 8, PageID #: 48).

As discussed in the prior section, throughout her opinion, the ALJ acknowledges evidence showing that Claimant continues to have back pain that radiates into his right leg, has antalgic gait, and is diagnosed with lumbar degenerative disc disease with radiculopathy and lumbosacral spondylosis. (ECF No. 8, PageID #: 52). However, as also discussed above, the ALJ considers this evidence alongside other clinical findings that she finds support an RFC for a limited range of light work, without inclusion of a need for an assistive device, including normal strength and coordination, normal range of motion in extremities, and lack of swelling and tenderness in legs, among others. (ECF No. 8, PageID #: 52). As discussed above, this objective evidence, and State agency medical opinions provide substantial evidence for the ALJ's RFC determination, including the determination to omit the use of a cane. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) ("Substantial evidence . . . is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion."); *see also Sittinger v. Comm'r of Soc. Sec.*, No. 1:22-CV-01927-BYP, 2023 WL 6219412, at \*13 (N.D. Ohio Sept. 7, 2023), *report & recommendation adopted sub nom.*, 2023 WL 6214530 (N.D. Ohio Sept. 25, 2023) ("An RFC determination that is supported by the medical opinions of state agency physicians is generally supported by substantial evidence."); *Maldonado o/b/o A.C. v. Kijakazi*, No. 4:20-CV-1878, 2022 WL 361038, at \*6 (N.D. Ohio Jan. 14, 2022), *report & recommendation adopted sub nom.*, 2022 WL 356557 (N.D. Ohio Feb. 7, 2022).  The ALJ was entitled to resolve conflicts in the evidence related to Claimant's testimony regarding the use of a cane and length of use of the cane. *See Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) ("It is for the Secretary to resolve conflicts in the evidence and decide questions of credibility." She adequately discussed her decision to omit the need for a cane from the RFC, and such decision is supported by substantial evidence.

### 3. The ALJ Adequately Explained her Decision Regarding Claimant's Ability to Stand and Walk Frequently and Findings Related to his Ability to Stand and Walk Are Supported by Substantial Evidence.

Claimant asserts that the ALJ failed to adequately explain her RFC finding relating to Claimant's ability to stand and walk frequently. (ECF No. 10 at 16). He argues that the ALJ used boilerplate language to explain her RFC determination and argues that by "broadly referencing the entire record like this, the ALJ has not discussed "how the evidence supports each conclusion, citing specific medical facts…and nonmedical evidence," in violation of SSR 96-8p. (ECF No. 10 at 17). Additionally, Claimant argues that the ALJ's RFC is not supported by Claimant's statements about his symptoms. (ECF No. 10 at 17). Finally, Lawrence asserts that because "SSR 96-9p states that when a medically required hand-held assistive device is needed only for prolonged ambulation, then the unskilled sedentary occupational base will not ordinarily be

significantly eroded" and this implies that "use of an assistive device would erode the ability to perform light exertional work." (ECF No. 10 at 18).

Commissioner argues that the ALJ "carefully considered the evidence regarding Plaintiff's mobility by considering his testimony, treatment records, and the partially persuasive prior administrative medical findings, each of which a reasonable person could agree indicated that Plaintiff retained the ability to stand/walk sufficient to perform light work" and asks the Court to reject the assertion that the ALJ offered only boilerplate explanations for the RFC assessment. (ECF No. 11 at 13).

The Court again agrees with the Commissioner. Though in one area of her opinion the ALJ uses general language to summarize the evidence she used to support her RFC determination and to summarize Claimant's conditions that she considered and accommodated for in crafting the RFC, the ALJ thoroughly discussed and considered evidence related to Claimant's mobility throughout her opinion, including Claimant's testimony, treatment records, prior State agency medical consultant opinions, and opinions of treating providers and other consultants. She considered evidence that Lawrence has continuing back pain that radiates into his right leg, has antalgic gait, and is diagnosed with lumbar degenerative disc disease with radiculopathy and lumbosacral spondylosis. (ECF No. 8, PageID #: 52). She considered Claimant's testimony that he could stand for only one hour before needing a break, that sitting bothers him, that lying flat is best for him, that he lies flat for most of the day, and that he uses a cane ordered by his doctor. (ECF No. 8, PageID #: 47–48). However, as mentioned previously in this opinion, the ALJ considered this evidence alongside other evidence from recent treatment records that she finds is inconsistent with Claimant's statements about the intensity, persistence, and limiting effects of his symptoms and that she finds, instead, supports an RFC for a limited range of light work, with the

ability to stand and walk frequently—including findings of normal strength and coordination, normal range of motion in extremities, and lack of swelling and tenderness in legs, among other findings. (ECF No. 8, PageID #: 49, 52). An ALJ is tasked with making credibility determinations and need not give weight to Claimant's statements if she finds they are contradicted by other objective medical evidence in the record. *See Felisky*, 35 F.3d at 1035; *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.). Thus, the ALJ need not support the RFC determination with statements made by Claimant.

The ALJ adequately explained her RFC determination, which impliedly included Plaintiff's ability to stand and walk frequently, and such determination, as described above, is supported by evidence that a reasonable person may accept as adequate to support the ALJ's RFC determination that Claimant can stand and walk frequently. This determination is additionally supported by two consistent State agency medical consultants' opinions. Thus, the ALJ's RFC determination, including an implied finding that Claimant can stand and walk frequently, is supported by substantial evidence. *See Cutlip*, 25 F.3d at 286 ("Substantial evidence . . . is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."); *see also Sittinger*, 2023 WL 6219412, at *13 ("An RFC determination that is supported by the medical opinions of state agency physicians is generally supported by substantial evidence."); *Maldonado*, 2022 WL 361038, at *6.

Finally, the Court notes that it has previously determined that the ALJ's decision to omit Claimant's need for assistive device from the RFC is supported by substantial evidence. Thus, the

Court will not consider whether the need for an assistive device would erode a claimant's ability to perform a reduced range light work.

## VI. Conclusion

Based on the foregoing, the Court AFFIRMS the Commissioner of the Social Security Administration's final decision denying Lawrence DIB and SSI.

**IT IS SO ORDERED.**

Dated: August 22, 2025

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE